UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KAI GARRETT GRIFFIN and AMY TURNER GRIFFIN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:18-cv-00069 |
| MEDTRONIC, INC., MEDTRONIC PLC, COVIDIEN LP, and COVIDIEN PLC, | ) Chief Judge Crenshaw ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this products liability action, Defendants have filed a Motion to Dismiss (Doc. No. 5), arguing that the Complaint "fails to comply with the pleading requirements of Federal Rules 8 and 12, as articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)." (Doc. No. 5 at 1). Because the Court disagrees, the Motion will be denied.

In Ashcroft and Twombly, the Supreme Court "raised the bar for pleading requirements beyond the old 'no-set-of-facts' standard of Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that prevailed for the last few decades." Courie v. Alcoa Wheel & Forged Prod., 577 F.3d 625, 629 (6th Cir. 2009). In doing so, however, it "did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims." Weisbarth v. Geauga Park Dist., 499 F.3d 538, 542 (6th Cir. 2007). Instead, "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [] legal argument[s]." Skinner v. Switzer, 562 U.S. 521, 530, 131 S.Ct. 1289, 179

1

L.Ed.2d 233 (2011). This short and plain statement need only contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Bandy v. Fifth Third Bank, 519 F. App'x 900, 902 (6th Cir. 2013) (citation omitted).

According to the Complaint, Kai Griffin was admitted to St. Thomas Midtown Hospital in Nashville, Tennessee for a laproscopic Roux-en-Y gastric bypass procedure. (Complaint, Doc. No. 1-1, ¶ 11). That procedure was preformed by Dr. James G. McDowell. (Id.).

During the procedure, Dr. McDowell utilized a "DST SERIES EEA OrVil 25mm device" ("OrVil Device"). (Id. ¶¶ 8, 11). That surgical instrument was "designed manufactured, and distributed" by Defendants. (Id. ¶ 8).

The OrVil Device consists of a nasogastric tube, and a disc-shaped part referred to as an "anvil." The tube is inserted into a patient's nose or mouth and pushed into the stomach. The anvil is connected to the tube by a plastic coupling measuring approximately 3 mm in length by 1mm in width. (Id ¶ 12).

When performing the surgery, Dr. McDowell removed the anvil from the nasogastric tube and coupling. In doing so, the coupling "broke off or separated from the nasogastric tube," and fell into Mr. Griffin's peritoneal cavity. (Id.). The "coupling piece is not manufactured or designed to break off or separate from the nasogastric tube during surgery," nor was such "an unintended and unexpected result . . . apparent to the ordinary users of the OrVil device[.]" (Id. ¶ 14).

Realizing that the coupling piece had separated from the tube, Dr. McDowell searched for, but could not find, it. As a consequence, Dr. McDowell was forced to complete the surgery and close the surgical site without removing the coupling. (Id. ¶¶ 15, 16). During post-op, Dr. McDowell explained to Mr. Griffin what had happened. In a follow-up visit when Mr. Griffin

complained of sharp intermittent pain, Dr. McDowell told him that another surgery might be necessary to remove the coupling. (Id. ¶¶ 17, 20).

On February 4, 2017, Mr. Griffin went to the Williamson Medical Center Emergency Department complaining of shoulder and abdominal pain. A CT scan revealed the presence of a foreign body that was later determined to be the plastic coupling piece. (Id. ¶¶ 21, 22).

On February 6, 2017, Mr. Griffin followed up with Dr. McDowell. The next day, at St. Thomas Midtown Hospital, Dr. McDowell laparoscopically removed the coupling from Mr. Griffin's abdomen. Mr. Griffin was discharged the next day.

In addition to alleging that the coupling device should not separate during surgery, Plaintiffs allege that (1) "the OrVil Device was in a defective condition, unreasonably dangerous, and unsafe for its intended purpose when it left Defendants' hands" (id. ¶ 32); (2) "Defendants failed to give instructions . . . as to its use that would make it safe" (id. ¶ 33); (3) Defendants "fail[ed] to use reasonable care in the design, manufacture, inspection, testing, and marketing of the OrVil Device" (id. ¶ 41); (4) the OrVil device "was unaccompanied by appropriate warnings" (id. ¶ 44); (5) "Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the OrVil device' (id. ¶ 46); and (6) "Defendants impliedly represented and warranted that the OrVil Device [was] fit for its intended and reasonably anticipated purposes and uses," but it was not (id. ¶ 49). Based upon Defendants acts and omissions, Plaintiffs claim that, not only did Mr. Griffin have to visit the Emergency Room and undergo an additional surgery, he "experienced significant pain" between the two surgeries, and "had severe anxiety over the fact that a broken product was somewhere in his body." (Id. ¶ 27).

When the factual allegations in the Complaint are accepted as true, they are more than

3

sufficient to place Defendants on notice of Plaintiffs' claims. They also plausibly state causes of action for strict liability, negligence, failure to warn, and breach of warranty.

Defendants rely on <u>Brown v. Crown Equip. Corp.</u>, 181 S.W.3d 268, 282 (Tenn. 2005) for the proposition that "[t]he plaintiff . . . must trace his or her injury to the defect," and on <u>King v. Danek Med., Inc.</u>, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) for the proposition that "unless there is a showing that the particular defect or dangerous condition proximately caused the plaintiff's injury, the manufacturer is not liable." True enough, but Defendants place the cart before the horse: <u>Brown</u> was decided in the context of a motion for a directed verdict, and <u>King</u> on a motion for summary judgment. Indeed, after discussing that very language from those cases, the Sixth Circuit "admoni[shed] that 'causal weaknesses' will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6)." <u>Jackson v. Ford Motor Co.</u>, 842 F.3d 902, 909–10 (6th Cir. 2016).

Defendants also rely on <u>Haynes v. Hamilton Cty.</u>, 883 S.W.2d 606, 611–12 (Tenn. 1994) that set forth the three-prong test for establishing proximate cause in Tennessee: "(1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence." Once again, that case was decided on summary judgment. Further, in <u>Jackson</u>, the Sixth Circuit also discussed <u>Haynes</u> and the law governing proximate cause in Tennessee before observing that this issue, too, is more properly the fodder of a motion for summary judgment.

"It is true . . . that the fact that a plaintiff is injured is not proof of a defect in the product and

4

that the plaintiff must show that there is something wrong with the product." Westfield Ins. Co. v. Broan-Nutone, LLC, No. 1-10-0110, 2011 WL 9048, at *2 (M.D. Tenn. Jan. 3, 2011). The time for making that showing comes later on, however. Indeed, even though "causation is an element of a products-liability action under Tennessee law . . . [a]t the pleading stage, [a plaintiff] need only allege causation." Jackson 842 F.3d at 907 n.2.

When deciding a Motion to Dismiss, a court is required "to draw on its judicial experience and common sense," Iqbal, 556 U.S. at 679, in determining whether the alleged facts state a plausible claim. Thus, for example, in Westfield, Judge Todd J. Campbell denied a motion to dismiss a products liability claim involving a ceiling fan where plaintiff alleged that (1) the fan "malfunctioned by failing and starting a fire (clearly not a use for which it was intended), which is a fact from which the Court can reasonably infer that the fan was defective and unreasonably dangerous," and (2) there was "no question of how the fire caused Plaintiff's injuries, by destroying the insured property." Westfield Ins. Co., 2011 WL 9048, at *2. Similarly, in this case, the essence of the Complaint is that, during an otherwise uneventful surgery, a piece of the Defendants' product broke when it shouldn't have, and fell into Mr. Griffin's abdomen resulting in pain and an additional surgery. The allegations and the reasonable inferences to be drawn therefrom are enough to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Accordingly, Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 5) is **DENIED**. This case is returned to Magistrate Judge Newbern for further pretrial case management.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE